UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANN ROSALIA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF HAYWARD, et al., <br><br> Defendants. | Case No. 21-cv-00380-VC <br><br> **ORDER GRANTING SUMMARY JUDGMENT** <br><br> Re: Dkt. No. 42 |

In excessive force cases like this one, police violate the Fourth Amendment where their actions prove objectively unreasonable "given the totality of the circumstances." *Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019). Courts "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Place*, 462 U.S. 696, 703 (1983); *see also Tennessee v. Garner*, 471 U.S. 1, 8 (1985). Each case presents its own unique context, but some key factors in the analysis include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The "most important" factor, the Ninth Circuit instructs, is whether the suspect posed an imminent threat to officers or bystanders. *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc). Additional factors include whether the officers identified themselves and warned the suspect that they would use deadly force. *Browder*, 929 F.3d at 1137–38. Through it all, courts must judge officers' use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

The video tells the story. Before arriving at the scene, the officers learned that Rosalia had been involved in a road altercation and that he might be armed with a gun. The officers arrived to find Rosalia enraged and ranting. He exclaimed "that motherfucker cut me off" and yelled "fuck you guys" at the police who had just arrived. The officers told Rosalia "let's work it out" and urged him to "calm down," asking him repeatedly whether he'd like them to call an ambulance. Rosalia, meanwhile, walked into his garage and stormed out with a long knife clenched in his right fist. At this point, the officers shouted repeatedly "put it down, put it down." But instead of dropping the knife, Rosalia assumed an aggressive posture and began waving the blade toward the officers. Some officers drew a taser; others a gun. Officer Naik, standing somewhere between five and ten feet from Rosalia, drew his firearm as the police continued to shout at Rosalia to drop the knife. Rosalia didn't: He lowered the blade toward his right hip, still holding it in a threatening manner, just feet from Naik (and even fewer feet from Rosalia's son, standing to his left). As Rosalia lurched forward, Naik fired multiple shots.

At each turn, the officers acted reasonably to confront a rapidly unfolding and dangerous situation, a conclusion with which no reasonable jury could disagree. Donned in their official uniforms, the officers clearly identified themselves as police. They first attempted to de-escalate a heated situation by urging Rosalia to calm down and offering to get him medical help. When Rosalia stormed out of his garage carrying a deadly weapon, they urged him to drop it and unholstered their weapons, giving Rosalia ample warning of what might happen if he didn't comply. *See Browder*, 929 F.3d at 1137–38. And when Rosalia—his right hand holding a multi-inch knife—moved toward Naik, standing just feet away, Naik did what any reasonable officer would: He stopped an imminent threat to his life. *Mattos*, 661 F.3d at 441; *Graham*, 490 U.S. at 396.

The plaintiffs are correct to note that often the question of whether officers acted reasonably turns on facts that a jury is best equipped to decide, and so summary judgment should be granted sparingly. But here, several recordings document undisputed facts that lead to only one reasonable conclusion. *See Scott v. Harris*, 550 U.S. 372, 378 (2007) (deciding summary

judgment based on uncontroverted video evidence). Faced with a deadly and unpredictable threat in a volatile context, the officers reasonably deployed deadly force.

The plaintiffs also note that one officer can be overheard on the recordings yelling "tase him" repeatedly once Rosalia came out of the garage with the knife. Perhaps, in hindsight, it would have been a better tactical move to tase Rosalia as soon as he came out of the garage. But this does not preclude summary judgment for the defendants. *Graham*, 490 U.S. at 396–97; *see also Monzon v. City of Murrieta*, 978 F.3d 1150, 1158–59 (9th Cir. 2020). The officers cannot be blamed for continuing to try to deescalate the situation rather than immediately tasing Rosalia when they saw the knife. And by the time Naik did shoot Rosalia, he was justified in doing so, given the imminent and serious threat.

Because no reasonable jury could conclude that the officers used excessive force, the defendants prevail as a matter of law on all claims brought by the plaintiffs, and judgment will be entered accordingly.

**IT IS SO ORDERED.**

Dated: July 5, 2022

_____
VINCE CHHABRIA
United States District Judge